UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SAMUEL XAVIER BRYANT,<br><br>          Petitioner,<br><br>   v.<br><br>W. MUNIZ,<br><br>          Respondent. | No.   1:16-cv-00190-DAD-JDP (HC)<br><br>FINDINGS AND RECOMMENDATIONS THAT COURT DENY PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR LEAVE TO AMEND<br><br>ECF Nos. 26, 50<br><br>OBJECTIONS DUE IN 14 DAYS |

Petitioner Samuel Xavier Bryant, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner proceeds on his first amended petition, which raises numerous claims, including insufficient evidence, ineffective assistance of counsel, erroneous jury instructions, and cruel and unusual punishment. After filing his traverse in support of his first amended petition, petitioner has filed a motion for leave to file a second amended petition. We recommend that the court (1) deny the first amended petition and (2) deny leave to amend.

**I.    Background**

We draw the following facts from the opinion of the Court of Appeal of the State of California, Fifth Appellate District ("Court of Appeal"). *See People v. Bryant*, No. F066725, 2014 WL 7025677 (Cal. Ct. App. Dec. 12, 2014). A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015). An independent review of the record warrants adopting these facts as a fair and accurate summary

of the underlying offenses.  *See Nasby v. McDaniel*, 853 F.3d 1049, 1054-55 (9th Cir. 2017).

This is a murder case involving a juvenile.  Petitioner, who was sixteen years old at the time of the offenses, and his uncle, Joseph Jamal Hendrix, were charged with killing Jacob Ramirez and shooting Emmanuel Gomez.  Both petitioner and Hendrix were members of the West Side Crips.

On February 16, 2012, petitioner and Hendrix looked for Ramirez, who lived in the apartment below petitioner's apartment.  Petitioner and Hendrix "aggressively questioned" Ramirez's friends and family during their search for Ramirez.  *Bryant*, 2014 WL 7025677, at *2. Eventually, Ramirez stepped out of his apartment, and a fistfight broke out between petitioner, Hendrix, and Ramirez.  Ramirez punched petitioner, breaking his jaw.  Petitioner then fired several shots.  One shot struck Ramirez's apartment, another wounded Gomez, and a third struck Ramirez in the chest.  Ramirez's mother testified that petitioner continued to shoot at Ramirez as Ramirez crawled on the ground, wounded.  Ramirez died from his injuries on April 7, 2012.

When interviewed by the police, petitioner stated that the dispute with Ramirez concerned some marijuana petitioner had bought from Ramirez:  Petitioner had bought ten dollars' worth of the drug from Ramirez, but later asked for a refund.  Ramirez refused to return petitioner's money, leading to the fistfight and shooting.

Following a jury trial, Bryant was convicted of one count of first degree murder (Cal. Pen. Code § 187(a)), one count of premeditated attempted murder (*id.* §§ 664, 187), two counts of assault with a semiautomatic firearm (*id.* § 245), one count of discharging a firearm at an inhabited dwelling (*id.* § 246), and one count of active participation in a criminal street gang (*id.* § 186.22(a)).  The Superior Court of Kern County sentenced Bryant to an aggregate prison term of eighty-two years to life.

## II.    Discussion

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition.  *See* § 2254; *Harrington v.*

*Richter*, 562 U.S. 86, 97 (2011); *Woodford v. Garceau*, 538 U.S. 202, 206-08 (2003). In a Section 2254 proceeding, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The standard that governs the federal court's habeas review depends on whether the state court decided petitioner's claims on the merits.

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of Section 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite to" a holding of the United States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Richter*, 562 U.S. at 102). One rule applies to all state prisoners' petitions decided on the merits: the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a Section 2254 petitioner still must satisfy a demanding standard to obtain habeas relief. When a state court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption

3

arises that the state court adjudicated the claim on the merits under Section 2254(d). *See Richter*, 562 U.S. at 99. And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all. *See Sexton*, 138 S. Ct. at 2557.

If a state court denies a petitioner's habeas claim solely on a procedural ground, then Section 2254(d)'s deferential standard does not apply. *See Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016). However, if the state court's decision relies on a state procedural rule that is "firmly established and regularly followed," the petitioner has procedurally defaulted on his claim and cannot pursue habeas relief in federal court unless he shows that the federal court should excuse his procedural default. *See Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016); *accord Runningeagle v. Ryan*, 825 F.3d 970, 978-79 (9th Cir. 2016). If the petitioner has not pursued his habeas claim in state court at all, the claim is subject to dismissal for failure to exhaust state-court remedies. *See Murray v. Schriro*, 882 F.3d 778, 807 (9th Cir. 2018).

If obtaining habeas relief under Section 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has explained, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.* at 103 (citation omitted). The federal court's habeas review serves as a "guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (emphasis added).

Here, petitioner raises eight habeas claims:

1. The Superior Court erroneously denied petitioner's request for a bifurcated trial.

2. The jury had insufficient evidence to support its verdict on the prosecution's gang allegation.

3. Petitioner's sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment.

4. Petitioner is entitled to habeas relief for the arguments raised on appeal by his codefendant, his uncle Hendrix.

4

5. There was insufficient evidence of premeditation and deliberation.

6. Petitioner received ineffective assistance of counsel because his counsel failed to investigate petitioner's mental competence and his mental state at the time of the offenses.

7. Petitioner received ineffective assistance of counsel because his counsel failed to move to try petitioner and Hendrix separately.

8. Petitioner received ineffective assistance of counsel because his counsel failed to seek certain jury instructions, and alternatively, the trial court erred by failing to include those jury instructions sua sponte.

ECF No. 26. All claims were decided on the merits in state court. The Court of Appeal addressed the first five claims on direct review in a reasoned opinion. Petitioner raised the remaining claims in his habeas proceeding in state court, and the Court of Appeal and the California Supreme Court summarily denied them. For efficiency's sake, the analysis below addresses petitioner's claims out of order.

**A. Insufficient Evidence Claims**

A criminal conviction unsupported by evidence can violate the Fourteenth Amendment's promise of due process, *see Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979), but a habeas petitioner challenging the sufficiency of evidence must overcome "two layers of judicial deference," *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). Under *Jackson v. Virginia*, the appellate court on direct appeal decides "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in original). On habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Maquiz v. Hedgpeth*, 907 F.3d 1212, 1225 (9th Cir. 2018) (quoting *Coleman*, 566 U.S. at 651). Combining the *Jackson* and Section 2254 deference, petitioner must show that "*no* fairminded jurist could conclude that *any* rational trier of fact could have found sufficient evidence to support the

conviction." *Id.* (emphasis in original).

### i. Premeditation and Deliberation

Petitioner contends that, because he fired several gunshots in an impulsive reaction to his fistfight with Ramirez, the jury had insufficient evidence to find the premeditation and deliberation required for convictions of first-degree murder of Ramirez and attempted premediated murder of Gomez. A fairminded jurist could disagree.

Under California law, "[m]urder is the unlawful killing of a human being, or a fetus, with malice aforethought." Cal. Penal Code § 187. First-degree murder has the "additional elements of willfulness, premeditation, and deliberation." *People v. Gomez*, 6 Cal. 5th 243, 282 (2018). Similarly, attempted murder carries a harsher penalty if it was "willful, deliberate, and premeditated." Cal. Penal Code § 664(a). Deliberation refers to "careful weighing of considerations in forming a course of action"; premeditation means "thought over in advance." *People v. Koontz*, 27 Cal. 4th 1041, 1080 (2002). "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly." *Gomez*, 6 Cal. 5th at 282.

Three categories of evidence "typically" suffice to show premeditation and deliberation: (1) planning before the killing; (2) a relationship between the defendant and the victim that supports a reasonable jury's inference of a motive to kill; and (3) the manner of killing. *People v. Brooks*, 3 Cal. 5th 1, 58-59 (2017). For example, evidence that a criminal defendant and his son armed themselves, searched for the victim, killed the victim, and shot a witness in the process could show planning. *See People v. Rangel*, 62 Cal. 4th 1192, 1213 (2016). Likewise, shooting the victim multiple times or shooting a fleeing victim can show the manner of killing sufficient to show premeditation and deliberation. *See People v. Bolin*, 18 Cal. 4th 297, 332 (1998) ("This forensic evidence indicates defendant did not want merely to wound either victim; he wanted to make certain they died.").

Here, a fairminded jurist could find sufficient evidence of premeditation and deliberation in the killing of Ramirez. Petitioner does not deny that he armed himself before confronting Ramirez, that he searched for Ramirez, or even that he shot Ramirez while Ramirez was crawling

6

away.  The Court of Appeal found that these facts sufficed to support a finding of premeditation and deliberation, *Bryant*, 2014 WL 7025677, at *6, and we find no error.

Petitioner disagrees, arguing that killing Ramirez was a result of an impulsive reaction. According to petitioner, Ramirez was bigger than him, and, before petitioner shot him, Ramirez had punched petitioner in the face, breaking his jaw.  However, petitioner merely offers an alternative narrative of his encounter with Ramirez; his narrative does not negate the evidence supporting the jury's findings of premeditation and deliberation.  No matter how threatening Ramirez might have been, a fairminded jurist could reason that any threat had dissipated by the time Ramirez was crawling away from petitioner.  Petitioner has not shown that there was insufficient evidence of premeditation and deliberation in the killing of Ramirez.

As for Gomez, the other victim, petitioner does not explain why he believes that the jury had insufficient evidence of premeditation and deliberation, so the court need not reach that issue. In any event, a fairminded jurist could find premeditation and deliberation based on the facts that Gomez was a witness at the crime scene, petitioner shot Gomez even though Gomez posed no threat, and the fistfight had ended when petitioner shot Gomez.  *See also People v. San Nicolas*, 34 Cal. 4th 614, 658-59 (2004) (reasoning that substantial evidence supported premeditation when defendant saw second victim's reflection in a mirror and turned around and stabbed her because defendant could have motive to eliminate witness to first murder).  Petitioner has not shown that the Court of Appeal's decision was unreasonable.

### ii.  Gang Enhancement

Petitioner challenges the enhancement of his sentence under Cal. Penal Code § 186.22(b), arguing that the jury had insufficient evidence to find that petitioner committed the underlying offenses with the specific intent to promote his gang.  ECF No. 26 at 27.  According to petitioner, the shooting of Ramirez and Gomez was purely personal and unrelated to any gang affiliation.

Under California Penal Code Section 186.22(b), a court may enhance a sentence of "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."  Petitioner does not deny that he committed the

7

underlying offenses "in association" with a criminal street gang. Instead, he argues that insufficient evidence supported the second part of the analysis: whether he had the specific intent to promote, further, or assist in any criminal conduct by gang members. "Commission of a crime in concert with known gang members is substantial evidence which supports the inference that the defendant acted with the specific intent to promote, further or assist gang members in the commission of the crime." *People v. Villalobos*, 145 Cal. App. 4th 310, 322 (2006). The specific intent to promote, further, or assist in *any* criminal conduct by a gang member—including the defendant's own offenses—is enough under Section 186.22(b). *See People v. Albillar*, 51 Cal. 4th 47, 65 (2010).

Here, a fairminded jurist could find sufficient evidence that petitioner committed the offenses in concert with Hendrix, another gang member, and that petitioner acted with the specific intent to assist Hendrix in the commission of a crime. The Court of Appeal found enough evidence of petitioner's intent to assist Hendrix. The Court of Appeal explained, "the evidence showed that both Hendrix and [petitioner] were members of a criminal street gang and worked together to locate Ramirez, as well as fought alongside each other in the altercation that ultimately resulted in [petitioner] killing Ramirez." *Bryant*, 2014 WL 7025677, at *3-4. Again, we see no error.

Petitioner contends that the evidence does not show that he committed the underlying offenses with the specific intent "to promote" his gang. ECF No. 26 at 27. Section 186.22(b) requires "the specific intent to promote, further, *or assist* in any criminal conduct by gang members" (emphasis added); petitioner's argument does not refute the Court of Appeal's reasoning on petitioner's specific intent to *assist* Hendrix, another gang member. *See Bryant*, 2014 WL 7025677, at *3-4. In any event, a fairminded jurist could reasonably reject petitioner's argument. Petitioner states correctly that this case lacks some characteristics common among gang violence: Ramirez was not a gang member; no one shouted gang names; the fight was not a turf battle; and no gang took credit for the killing. A fairminded jurist, however, could find that the evidence showed that this was a gang shooting: rare is a teenager who kills a man for ten dollars' worth of marijuana or shoots a victim who is crawling away. This extraordinary level of

violence and cruelty is consistent with the testimony of the prosecution's expert on gangs, who explained that gangs tend to escalate the level of violence to build their reputation.  RT 4:600-03.[1]  Petitioner has not shown that the Court of Appeal's decision on his gang enhancement is unreasonable.

### B.  Ineffective Assistance of Counsel

Another deferential standard governs a federal habeas petitioner's claim of ineffective assistance of counsel.  On direct appeal, the two-step inquiry from *Strickland v. Washington* guides the analysis.  *See* 466 U.S. 668, 687 (1984).  First, a criminal defendant must show some deficient performance by counsel that is "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id*.  Second, the defendant must show that the deficient performance caused him prejudice, which requires "showing that counsel's errors were so serious as to deprive [the petitioner] of a fair trial." *Id*.  On habeas review, coupled with Section 2254(d)'s fairminded jurist standard, the *Strickland* requirements become even more deferential: the question is "whether there is *any* reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (emphasis added).  That is, if there is even *one* reasonable argument that counsel did not violate the *Strickland* standard—even if the state court has not identified that argument—the petitioner cannot obtain habeas relief.  *See id*. at 106.

### i.  Mental Impairments

Petitioner contends that he received ineffective assistance from his trial counsel because counsel failed to investigate and raise issues pertaining to petitioner's mental impairments.  Petitioner alleges that he has, among other conditions, Attention Deficit/Hyperactivity Disorder ("ADHD"), an unidentified learning disability, an unidentified IQ score that is allegedly low, a history of drug abuse, and an inability to assert himself.  Given these mental impairments, petitioner argues, his trial counsel should have moved for a competency proceeding, asked for appropriate jury instructions, and offered expert testimony on the alleged mental impairments.

---

[1] All "RT" citations refer to the reporter's transcript, which includes the trial transcript.  All "CT" citations refer to the clerk's transcript, which includes the parties' court submissions.

Petitioner also argues that his appellate counsel was ineffective in failing to raise these issues on appeal.

Before June 1982, the defense of diminished capacity under California law could negate the premeditation and deliberation necessary for first-degree murder. *See Daniels v. Woodford*, 428 F.3d 1181, 1208 n.29 (9th Cir. 2005); *People v. Marshall*, 13 Cal. 4th 799, 846 (1996). Mental illness and voluntary intoxication were both recognized as causes of diminished capacity. *See People v. Marshall*, 13 Cal. 4th 799, 846 (1996). However, California has now abolished the defense of diminished capacity in both adult and juvenile criminal proceedings.[2] After the abolition of the diminished capacity defense, a criminal defendant can raise what is known as a diminished actuality defense and show that "because of his mental illness or voluntary intoxication, he did not *in fact* form the intent unlawfully to kill." *People v. Saille*, 54 Cal. 3d 1103, 1116-17 (1991) (emphasis in original). Thus, a criminal defendant cannot avoid a first-degree murder conviction by showing that his mental illness precluded his *ability* to have the required mental state, but he can introduce evidence that "tends to show that the defendant did or did not in actuality (as opposed to capacity) have the mental state." *People v. Cortes*, 192 Cal. App. 4th 873, 908 (2011); *accord People v. Elmore*, 59 Cal. 4th 121, 142 (2014) (distinguishing capacity to form mental state from actual formation of mental state). Petitioner makes no such showing here.

Petitioner also relies on his alleged mental impairments to argue that he was denied a competency hearing. A California trial court has a duty to suspend proceedings and determine a criminal defendant's mental competence if "a doubt arises in the mind of the judge as to the

---

[2] *See* Cal. Penal Code § 25(a) ("The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged."); *id*. § 28(b) ("As a matter of public policy there shall be no defense of diminished capacity, diminished responsibility, or irresistible impulse in a criminal action or juvenile adjudication hearing."); *People v. Nelson*, 1 Cal. 5th 513, 556 (2016) (rejecting argument that defendant suffered from paranoid schizophrenia on morning of shootings and that his severe mental disorder caused him delusions after abolishment of diminished capacity defense).

mental competence of the defendant." *People v. Mickel*, 2 Cal. 5th 181, 201 (2016). A criminal

defendant is mentally incompetent if he lacks "sufficient present ability to consult with his lawyer

with a reasonable degree of rational understanding" or "a rational as well as factual understanding

of the proceedings" against him. *Id.* Only "substantial evidence" triggers a criminal defendant's

a competency hearing as a matter of right. *Id.* The defendant must exhibit more than "a

preexisting psychiatric condition that has little bearing on the question . . . whether the defendant

can assist his defense counsel." *People v. Rogers*, 39 Cal. 4th 826, 847 (2006) (citation omitted).

A similar standard applies to jury instructions on mental impairments. A jury instruction

on involuntary manslaughter is "required whenever there is *substantial evidence* indicating the

defendant did not actually form the intent to kill." *People v. Rogers*, 39 Cal. 4th 826, 884 (2006)

(emphasis added). A jury verdict of involuntary manslaughter is "warranted where the defendant

demonstrates that because of his mental illness . . . he did not in fact form the intent unlawfully to

kill (*i.e.*, did not have malice aforethought)." *People v. Rogers*, 39 Cal. 4th 826, 884 (2006).

Here, petitioner's evidence does not show any severe mental impairment. *See* CT 3:770-

73; ECF No. 26 at 80-86. For example, petitioner's declaration states:

> I have been told by my mom I have a history of (ADHD), I am slow
> at learning and been receiving SSI for my disabilities. I am a
> Develop[]mental Disabled Prisoner (DDP) inmate and enrolled in
> the mental health services. I was taking Remeron. I have put in a
> request for my mental records for this prison. I don[']t know how
> to get records regarding me from the outside agencies. I have tried
> to get my public defender file but they refuse to send to me after
> several request[s]. I do not underst[a]nd the laws and proce[]dures
> of court. Manuel Shotwell T57486 is my only legal
> represent[t]ative and he has prepared all motions/writs on my
> behalf. I have a hard time reading and understanding and my tabe
> score is below 4.0 so I need assist[a]nce.

ECF No. 26 at 83. These statements are too vague even for a pro se litigant and do not suggest

that petitioner's mental impairments affected actual formation of the required mental state. We

know of no authority establishing that ADHD can require a competency proceeding. Petitioner's

reference to SSI appears to be a reference to Supplemental Security Income under the Social

Security Act, *see generally* 42 U.S.C. §§ 1381-83f, but an individual can be disabled under that

Act for a wide variety of reasons, *see* 42 U.S.C. § 1382c (a)(3)(A) (defining disability), so having

received SSI does not show that petitioner suffered severe mental impairments for habeas purposes. Likewise, being classified as a DDP inmate does not show that petitioner suffered severe mental impairment for habeas purposes: petitioner's exhibit on his DDP status shows that he required simple instructions, assistance with reading and writing, and assistance in stressful or new situations. *See* ECF No. 26 at 86. Petitioner does not explain how such difficulties matter here. Nor does he identify his mental impairments, and the record gives us no reason to believe that petitioner's conditions are so severe that he cannot identify his own mental impairments, especially with the help of another individual (Manuel Shotwell). *See* ECF No. 26 at 83.

Petitioner concedes in his traverse that he adduces no evidence in support of his alleged mental impairments, but he faults the state public defender's office for failing to help him obtain such evidence. *See* ECF No. 48 at 9. He vaguely states that the public defender's office has been "uncooperative," but he does not allege that he alerted his counsel of his unidentified mental impairments during his state criminal proceedings. Neither does he explain how his counsel could have learned about those impairments. Petitioner asks for an evidentiary hearing, *id.*, but the court should not hold an evidentiary hearing in the absence of any explanation of petitioner's supposed mental impairments (aside from petitioner's claim that his mother told him that he had a history of ADHD)—and without any justification of petitioner's failure to develop the record in state court.

In sum, because petitioner has not shown that he had severe mental impairments, he has not shown that any fairminded jurist would find his trial and appellate counsel ineffective or that he suffered prejudice because of the alleged errors.

### ii. Severance

At trial, petitioner's main defense was that he was not the shooter. *See generally* RT 5:795-815 (closing argument of petitioner's trial counsel). Petitioner argues that he received ineffective assistance from his trial counsel because she failed to move for severance, which would have resulted in separate trials for petitioner and Hendrix. He also argues that his appellate counsel was ineffective because counsel failed to brief the issue.

Plaintiff's severance claim fails for two reasons.  First, there is "no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses." *Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012); *accord Zafiro v. United States*, 506 U.S. 534, 538-39 (1993); *Collins v. Runnels*, 603 F.3d 1127, 1131 (9th Cir. 2010).  Because there is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses, there can be no violation of clearly established federal law for counsel's failure to move for severance. *See Runningeagle*, 686 F.3d at 774; *Bunn v. Lopez*, No. 11-cv-1373, 2016 WL 4010038, at *18 (E.D. Cal. July 26, 2016), *aff'd*, 740 F. App'x 145 (9th Cir. 2018).

Second, petitioner cannot satisfy the prejudice prong of the *Strickland* analysis. Ramirez's mother, Leticia Pagatpatan, testified at trial that she saw petitioner shooting at Ramirez while Ramirez was crawling on the ground and that Hendrix was not the one shooting:

> **Q** What was Samuel doing when you saw him?
>
> **A** Shooting my son.
>
> . . .
>
> **Q** Did you see who was holding the gun?
>
> **A** Yes.
>
> **Q** I am going to have Mr. Joseph Hendrix stand up.  Was this boy holding the gun?
>
> **A** No.
>
> . . .
>
> **Q** Did you say when you saw him on the ground, that he was prone?  Is that the word you used?
>
> **A** (Shakes head.)
>
> **Q** I didn't hear the word.
>
> **A** He was crawling.
>
> **Q** Crawling.  Is it fair to say he was crawling as if he were with his face and his chest toward the ground?
>
> **A** Yes.

RT 2:238-39, 263, 267. Emmanuel Gomez,[3] the victim for the attempted murder count, testified that petitioner had shot him:

> **Q** After you heard the first shot, what did you do?
>
> **A** I turned to see where it was coming from.
>
> **Q** Did you see anybody shooting?
>
> **A** Yes, I did.
>
> **Q** Who was it that was shooting?
>
> **A** Samuel Bryant.
>
> **Q** You got hit at some point, didn't you?
>
> **A** Yes, I did.
>
> . . .
>
> **Q** How many times did you get shot?
>
> **A** I got shot once.

RT 2:289. Petitioner's mother, Stacey Smiley, testified at trial that she did not see Hendrix at the scene of the shooting. *See* RT 3:428-29. Petitioner identifies no evidence supporting his claim that Hendrix was the shooter. Given these circumstances, a reasonable jurist could find that, even if the trial court had held two separate trials for petitioner and Hendrix, the outcome of the trial would have been the same.

In his traverse, petitioner does not deny that he was the shooter. Indeed, in response to respondent's argument that the evidence was "compelling" that petitioner was the shooter, ECF No. 39 at 38, petitioner concedes that fact:

> The issue has been presented with merit and really need no further argument, but (PET) will high-light to the court that the Attorney General answer stated: *Indeed, there was compelling evid. (PET) was the shooter.* That is the problem! "Common Sense" would lead a competent Attorney not to argue such *a weak position* and destroy (PET) credibility while his own uncle/co. def is arguing (PET) is in fact the shooter! There is more likely than not of a chance the trial court would've granted the motion to sever. Having made the

---

[3] The prosecutor and the Court of Appeal referred to Emmanuel Gomez as "Manuel Gomez," but we rely on the witness's own spelling of his name. *Compare* RT 2:267, *and Bryant*, 2014 WL 7025677, at *1, *with* RT 2:268.

14

> [ommission] (PET) was prejudiced and the facts simply lead to it no
> doubt! Accordingly, reversal is the just remedy.

ECF No. 48 at 10 (emphasis added).  Although petitioner appears to argue that his trial counsel

should have raised some defense other than that petitioner was not the shooter, that reasoning

does not support his claim that his trial counsel was ineffective for failing to move for severance.

Even if the trial court did hold two separate trials, the prosecution could introduce the above-cited

witness testimony.  Because petitioner has not shown that the outcome of the trial would have

been different absent his counsel's alleged error, he has not satisfied the prejudice prong of

*Strickland*.  The court should therefore decline to grant habeas relief on the ground that

petitioner's counsel failed to move for severance.

### iii. Provocation and Heat of Passion

Petitioner contends that his trial counsel was ineffective in failing to argue that the

shootings occurred because of provocation or in the heat of passion and for failing to ask for jury

instructions on provocation or heat of passion.  He also contends that his appellate counsel was

ineffective for failing to brief these issues.  Petitioner argues under the same heading (ineffective

assistance of counsel) that the trial court should have given jury instructions sua sponte on

provocation and heat of passion, even though a court's failure to act sua sponte is not ineffective

assistance of counsel.  *See* ECF No. 26 at 69.  Petitioner repeats the same argument addressed

above: that the shootings occurred in response to petitioner's physical altercation with Ramirez—

a bigger man who had broken petitioner's jaw.

Again, petitioner cannot satisfy the prejudice prong of *Strickland*.  As discussed above,

the evidence showed that petitioner was angry when searching for Ramirez.  Petitioner armed

himself before the fistfight.  And by the time Ramirez was crawling on the ground, any threat to

petitioner had arguably dissipated.  Given the facts of the case, trial counsel's failure to pursue the

provocation theory or the heat-of-passion theory cannot establish prejudice.

Petitioner also cannot obtain habeas relief based on the state trial court's failure to give

sua sponte jury instructions on provocation and heat of passion.  The Ninth Circuit has explained

that there is no clearly established federal constitutional right to lesser included instructions in

non-capital cases. *See United States v. Begay*, 673 F.3d 1038, 1045 (9th Cir. 2011) (reasoning on direct appeal that murder defendant is not automatically entitled to jury instruction on heat of passion); *United States v. Rivera-Alonzo*, 584 F.3d 829, 834 n.3 (9th Cir. 2009) (noting that no such constitutional right exists in habeas context); *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (per curiam) (reasoning on habeas review that failure to instruct on heat-of-passion voluntary manslaughter did not constitute constitutional error); *Atchley v. Fox*, No. 13-cv-9268, 2015 WL 10733958, at *18 (C.D. Cal. Oct. 6, 2015), *report and recommendation adopted*, 2016 WL 1688737 (C.D. Cal. Apr. 26, 2016) (same). Moreover, given the facts of the case, the omission of the jury instruction had no substantial and injurious effect or influence on the jury. *See Mora v. Lewis*, 630 F. App'x 658, 661 (9th Cir. 2015) (applying harmless error standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), to state trial court's failure to instruct jury on provocation and heat of passion).

### C. Bifurcation

Before trial, petitioner's trial counsel moved to bifurcate proceedings, seeking to separate Count 6—active participation in a criminal street gang (Cal. Penal Code § 186.22(a))—from the other counts facing petitioner. The trial court declined to bifurcate, and the Court of Appeal affirmed. In this habeas proceeding, petitioner contends that his right to a fair trial and his rights under the Fourteenth Amendment were violated by the court's refusal to bifurcate. ECF No. 26 at 17. This claim fails for two reasons.

First, petitioner does not identify any Supreme Court precedent in support of his claimed right to bifurcation, and we have found none. Petitioner's vague appeals to his fair trial rights and to the Fourteenth Amendment, without more, do not state a cognizable federal habeas claim. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004). Only the holdings in the Supreme Court's decisions can identify "clearly established Federal law," *see Atwood v. Ryan*, 870 F.3d 1033, 1046 (9th Cir. 2017), and petitioner has identified none.

Second, the Court of Appeal explained that the trial court's refusal to bifurcate proceedings was a harmless error at best, given that the trial court instructed the jury that it should consider the evidence of gang activity only (1) when evaluating the gang-related crimes and

enhancements and (2) when considering whether petitioner had a motive to commit the other charged crimes. *See Bryant*, 2014 WL 7025677, at *5. Petitioner does not argue that the limiting jury instruction was defective in any way. Because any error was harmless, the court should not grant habeas relief based on the court's decision not to bifurcate proceedings. *See Brecht*, 507 U.S. at 619.

### D. Sentencing

At the time of the offenses, petitioner was a sixteen-year-old with no criminal history. The trial court did not consider his youth in sentencing him to an aggregate term of eighty-two years to life, precluding parole until his ninety-ninth birthday. The Court of Appeal determined that the trial court had erred by sentencing petitioner without taking into account his youth, but concluded that the enactment of California Penal Code Section 3051, which allowed petitioner to obtain a parole hearing during the twenty-fifth year of his incarceration, mooted the issue of whether his sentence violated the Eighth Amendment. *See Bryant*, 2014 WL 7025677, at *5.

The Eighth Amendment's prohibition against cruel and unusual punishment requires different treatment for juvenile offenders at sentencing. A juvenile may not be sentenced to life in prison without parole unless he or she has committed homicide. *Graham v. Florida*, 560 U.S. 48, 74 (2010). Even in a homicide case, a state's sentencing law violates the Eighth Amendment if it mandates a life sentence without parole for a juvenile. *See Miller v. Alabama*, 567 U.S. 460, 479 (2012). When a state's sentencing law does not require life in prison without parole, a sentence of life without parole is not foreclosed, but under *Miller v. Alabama*, the sentencing court must consider the "mitigating qualities of youth," 567 U.S. at 476, such as "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison," *Montgomery v. Louisiana*, 136 S. Ct. 718, 733 (2016) (quoting *Miller*, 567 U.S. at 476, 480). The requirements of *Miller*, decided in June 2012, about four months after the offenses in this case, apply retroactively. *See id.* at 727.

*Miller* does not require that states relitigate sentences in every case involving juvenile offenders sentenced to life without parole. *See id.* at 736. As the Supreme Court explained in *Montgomery v. Louisiana*, a state may remedy a *Miller* violation by granting a juvenile homicide

offender parole eligibility. *See id.* As an example, the Court in *Montgomery* referenced Wyoming's statute, which provided parole eligibility for juvenile offenders after twenty-five years of incarceration. *See id.* (citing Wyo. Stat. Ann. § 6-10-301(c) (2013)). According to the Court, "Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." *Id.*

In response to *Miller*, California enacted new statutory provisions, including California Penal Code Section 3051. *See also* 2013 Cal. Legis. Serv. Ch. 312 (S.B. 260) ("The purpose of this act is to establish a parole eligibility mechanism . . . in accordance with . . . *Miller* . . . ."). Section 3051 mandates parole hearings for juveniles during the fifteenth, twentieth, or twenty-fifth year of incarceration, depending on the "controlling offense"—meaning the offense or enhancement for which the sentencing court imposed the longest term of imprisonment. *See* Cal. Penal Code § 3051(a)(2); *People v. Franklin*, 63 Cal. 4th 261, 277-78 (2016). A juvenile is entitled to a parole hearing during his or her twenty-fifth year at the latest. Cal. Penal Code § 3051(a)(2); *Franklin*, 63 Cal. 4th at 278. Section 3051 requires a "meaningful opportunity to obtain release" for a juvenile at each parole hearing and requires the Board of Parole Hearings to adopt regulations "consistent with relevant case law." Cal. Penal Code § 3051(e). Psychological evaluations and risk assessment instruments, if used, must consider "the diminished culpability of youth as compared to that of adults, the hallmark features of youth, and any subsequent growth and increased maturity of the individual." *Id.* § 3051(f)(1). Section 3051 applies retroactively and supersedes juvenile sentences imposed even before its effective date of January 1, 2014, regardless of the date of conviction. *See Franklin*, 63 Cal. 4th at 278.[4]

Here, the Court of Appeal's decision that the enactment of Section 3051 mooted petitioner's Eighth Amendment claim is not unreasonable. The California legislature enacted Section 3051 to comply with *Miller*; it requires a meaningful opportunity for parole release for

---

[4] Section 3051 excludes some categories of juvenile offenders from parole eligibility such as the offenders sentenced under California's Three Strikes Law, Cal. Penal Code §§ 667(b)-(i), 1170.12, and Jessica's law, *id.* § 667.61. *See Franklin*, 63 Cal. 4th at 278. Those exceptions do not apply here.

18

juveniles and provides for regulations consistent with case law.  As with the Wyoming statute

referenced in *Montgomery*, 136 S. Ct. at 736, Section 3051 makes California juvenile offenders

eligible for parole during their twenty-fifth year of incarceration at the latest.  The California

Supreme Court has held that the enactment of Section 3051 mooted a claim arising under *Miller*.

See *Franklin*, 63 Cal. 4th at 276-77.  Recently, the Ninth Circuit agreed with that reasoning:

> The California Supreme Court has recognized that § 3051(b)(4)
> effectively moots a *Miller* claim by converting a juvenile's LWOP
> sentence into one for life with the possibility of parole after 25
> years.  We agree; the district court therefore correctly denied
> Bunn's petition for habeas relief.

*See Bunn v. Lopez*, 740 F. App'x 145, 147 (9th Cir. 2018) (citing *Franklin*, 63 Cal. 4th at 276).

Petitioner repeats his appellate argument that his sentence of eighty-two years to life is

practically a life sentence with no possibility of parole.  He does not address the significance of

Section 3051.  The enactment of Section 3051 makes petitioner eligible for a parole hearing

during his twenty-fifth year of incarceration.  *See Franklin*, 63 Cal. 4th at 279 (reasoning that a

juvenile offender convicted of first-degree murder under California is entitled to parole hearing

during his twenty-fifth year of incarceration); *Bryant*, 2014 WL 7025677, at *5.  Because a term

of imprisonment of twenty-five years to life is not a life sentence without parole, it does not run

afoul of *Miller*.  *See Demirdjian v. Gipson*, 832 F.3d 1060, 1077 (9th Cir. 2016) (concluding that

a sentence of two consecutive terms of twenty-five years to life is not life without parole and that

such sentence does not trigger *Miller* requirements).

**E.  Incorporation of Claims Raised by Hendrix on Direct Appeal**

Petitioner purports to incorporate the arguments raised by his codefendant, Hendrix, on

direct appeal.  He says in his petition:

> **Bryant Joins In The Brief And Arguments Raised By Co-Defendant Joseph Hendrix.**
>
> Samuel Bryant joins in the brief filed by his Joseph Hendrix, and in
> all arguments raised in that brief. (Cal. Rules of Court, rule
> 8.200(a)(5).)

ECF No. 26 at 42.  Petitioner does not develop this line of argument,[5] so the court need not consider it.  *See Williams v. Rodriguez*, No. 14-cv-2073, 2017 WL 511858, at *9 (E.D. Cal. Feb. 8, 2017) ("Undeveloped arguments that are only argued in passing or made through bare, unsupported assertions are deemed waived.") (citing *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010)); *Lexington Ins. Co. v. Silva Trucking, Inc.*, No. 14-cv-15, 2014 WL 1839076, at *3 (E.D. Cal. May 7, 2014) (collecting cases).

### F.  Motions to Amend Petition and to Stay Proceedings

Petitioner moves to amend his petition, seeking to add four new claims.  He does not develop arguments supporting these claims but rather appeals to broad principles and bodies of law that he alleges entitle him to habeas relief.  Petitioner states:

> I.  Petitioner's judgment should be conditionally reversed and remanded due to the passage of Proposition 57 and the standard set in *Estrada* and the guaranteed equal protection of the law under California and United States Constitution. . . .
>
> II.  Petitioner's sentence must be remanded to the trial court under SB 620 to permit the Court to exercise its discretion to strike the firearm enhancement imposed in this case. . . .
>
> III. Petitioner is entitled to make a record of mitigating evidence tied to his youth under *Franklin* and his guaranteed right to equal protection of the law as protected by state and federal constitutions. . . .
>
> IV. Penal Code Section 186.22(b)(1) is unconstitutionally Standardless it invites arbitrary enforcement violating petitioner's rights to trial and due process guaranteed by state and federal constitution. . . .

ECF No. 50 at 15-26; *see also* ECF No. 51.  Petitioner states that these are "newly discovered" claims arising from recent changes in California state law and that the alleged legal changes establish "extraordinary circumstances" justifying his late attempt to add new claims.  *See* ECF No. 50 at 3.  Petitioner also argues that the court should stay this case while he exhausts these claims in state court.  *See id.*

---

[5] Petitioner appears to have copied and pasted various parts of his appellate brief into his petition.

The court should deny petitioner's motion to amend because the proposed amendment is futile. *See Murray v. Schriro*, 745 F.3d 984, 1014 (9th Cir. 2014). First, errors of state law ordinarily cannot support cognizable federal habeas claims, *Deck v. Jenkins*, 814 F.3d 954, 977 (9th Cir. 2016), unless the errors rise to the "level of a due process violation," *Smith v. Ryan*, 823 F.3d 1270, 1282 n.8 (9th Cir. 2016) (quoting *Lewis v. Jef*fers, 497 U.S. 764, 781 (1990)). California's Proposition 57, referenced in petitioner's first claim, changed California state-law procedures on how a juvenile offender is prosecuted. *See People v. Superior Court (Lara)*, 4 Cal. 5th 299, 303-05 (2018) (discussing proposition 57). *In re Estrada*, decided by the California Supreme Court, interpreted state law. 63 Cal. 2d 740, 742 (1965). California's Senate Bill 620 amended the California Penal Code to allow sentencing courts to strike firearm enhancements under state law. *See generally* 2017 Cal. Legis. Serv. Ch. 682 (S.B. 620).

The *Franklin* decision by the California Supreme Court partly concerned federal law in that it considered the Eighth Amendment and the *Miller* requirements in evaluating whether the enactment of California Penal Code Section 3051 mooted a juvenile offender's claim arising under *Miller*. *See* 63 Cal. 4th at 276. But the proposition for which petitioner cites *Franklin*—that he should be allowed an opportunity to develop the record pertaining to his youth—relied not on any rule of clearly established *federal* law, but on the California Supreme Court's own rationale: that developing a record related to youth is more appropriate when it is done around the time of the offense "rather than decades later when memories have faded, records may have been lost or destroyed, or family or community members may have relocated or passed away." 63 Cal. 4th at 284. The U.S. Supreme Court in *Miller* did not establish such a procedural safeguard. Indeed, the California Supreme Court in *Franklin* reached the issue of whether to remand the case after deciding that the enactment of Section 3051 had mooted a claim under the Eighth Amendment and *Miller*. *See id.* Given the *Franklin* court's conclusion that a claim arising under the Eighth Amendment and *Miller* was moot, the decision to remand the case for additional development of the record relating to youth cannot have been based on either the Eighth Amendment or *Miller*. The California Supreme Court was of course permitted to provide greater procedural protection than that mandated by *Miller*, but its decision to do so did not result in a

rule of clearly established *federal* law that would bind this court in a Section 2254 proceeding. *See Atwood*, 870 F.3d at 1046 ("[C]learly established Federal law includes only the Supreme Court's decisions."). Because the *Franklin* procedure of developing the record on a juvenile offender's youth is not a matter of federal law, petitioner's request for an opportunity to develop the record on petitioner's youth does not state a cognizable federal habeas claim. Petitioner has not yet presented these new claims to state court; we need not decide whether any state law violation has risen to the level of a due process violation.[6]

Second, general appeals to broad principles do not state cognizable federal habeas claims. *See Casey*, 386 F.3d at 913. Only the holdings in the Supreme Court's decisions can identify "clearly established Federal law." *See Atwood*, 870 F.3d at 1046. Although petitioner refers to principles of equal protection, he does not explain how such principles matter here. He also does not identify any relevant Supreme Court holding. The court should not grant habeas relief based on petitioner's vague references to equal protection.

Third, petitioner's challenge to California Penal Code Section 186.22, which concerns his gang enhancement, is untimely. As noted above, petitioner's sentence was enhanced under Section 186.22 before he filed the petition in this case. Petitioner has not explained how his challenge to Section 186.22 complies with the one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1).

In sum, the court should deny petitioner's motion to amend because the proposed amendment is futile. Because the proposed amendment does not state a cognizable federal habeas claim, we need not consider petitioner's request for a stay of this case. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

---

[6] As respondent acknowledges in the answer, ECF No. 39 at 25, the California Supreme Court has denied petitioner's request for review *without prejudice* to any relief petitioner may pursue *after* the California Supreme Court's decisions in *Franklin*, 63 Cal. 4th 261, *In re Alatriste*, 317 P.3d 1183 (Cal. 2014), and *In re Bonilla*, 381 P.3d 222 (Cal. 2016). It appears that petitioner may not be precluded from pursuing remedies such as the development of record on youth in state court, but that is a question of state law for California courts to decide. Should any violation of due process arise, petitioner may pursue remedies in federal court after he has exhausted his remedies in state court. Depending on the circumstances, petitioner may open a new habeas case before this court or move to reopen this case—upon a showing of good cause.

## III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing Section 2254 Cases requires that a district court issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, the court should decline to issue a certificate of appealability.

## IV. Findings and Recommendations

The court should deny the petition for a writ of habeas corpus, ECF No. 26, and petitioner's motion for leave to amend and for a stay, ECF No. 50, and decline to issue a certificate of appealability.

These findings and recommendations are submitted to the U.S. District Court Judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, any party may file written objections to the findings and recommendations with the court. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:     February 28, 2019

_____
UNITED STATES MAGISTRATE JUDGE

No. 202